894 F.2d 607
 133 L.R.R.M. (BNA) 2362, 58 USLW 2455,
114 Lab.Cas. P 11,836
 Elizabeth DOLE,[1] Secretary of Labor, United
States Department of Labor, Appellant
v.
LOCAL 427, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND
MACHINE WORKERS, AFL-CIO.
 No. 88-5467.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 2, 1988.
Decided Jan. 18, 1990.
 
 Scott R. McIntosh (argued), Leonard Shaitman, Appellate Staff, Civ. Div. Dept. of Justice, Washington, D.C., for appellant.
 Mark C. Rushfield (argued), Guazzo, Perelson, Rushfield & Guazzo, Clifton, N.J., for appellee.
 Before HIGGINBOTHAM, Chief Judge, and MANSMANN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Chief Judge.
 
 
 1
 This appeal arises from an action filed by the Secretary of Labor on behalf of the United States of America ("the Government") pursuant to sections 104 and 210 of the Labor-Management Reporting and Disclosure Act ("LMRDA" or the "Act"), 29 U.S.C. Secs. 414 & 440 (1982). The Government sought to enjoin a local union from refusing to permit one of its members to review collective bargaining agreements between the union and employers other than her own. The district court granted the defendant union's motion for summary judgment and dismissed this action on the grounds that it was barred by the statute of limitations. In so doing, the district court imported the six months statute of limitations of Sec. 10(b) of the National Labor Relations Act ("NLRA") ("section 10(b)"), 29 U.S.C. Sec. 160(b) (1982), since section 104 of the LMRDA is silent as to any statute of limitations. We hold that no statute of limitations should apply to suits of this type brought by the Government under section 104 of the LMRDA.
 
 I.
 
 2
 The essential facts of this case are undisputed. In a letter dated June 18, 1986, Hortensia Colmenares, a member of Local 427, International Union of Electrical, Radio and Machine Workers, AFL-CIO ("Local 427" or "the union"), requested a copy of the collective bargaining agreement entered into between Local 427 and her employer, Keene Corporation. In this letter, she also asked to review the collective bargaining agreements that Local 427 had entered into with employers other than Keene Corporation. Local 427, a local labor organization governed by the provisions of the LMRDA, 29 U.S.C. Secs. 401-531 (1982) represents approximately 60 different shops throughout New Jersey and New York City. Brock v. Local 427 Int'l Union of Elec. Radio & Mach. Workers, 682 F.Supp. 1315, 1317 (D.N.J.1988). On June 26, 1986, Ms. Colmenares presented a copy of the June 18th letter to the president of Local 427, Henry Annucci. Shortly thereafter, Ms. Colmenares received a copy of the most recent Local 427/Keene Corporation collective bargaining agreement. However, by a letter dated August 22, 1986, Local 427 informed Ms. Colmenares that it would not permit her to inspect its collective bargaining agreements with other employers. In explaining its refusal to permit review of these other agreements, the union asserted that Ms. Colmenares' request was a "fishing expedition" which threatened to reveal employers' confidential information "in a process which could expose them to non-union or other competition." Id. at 1317 n. 2. (quoting Letter dated August 22, 1986 of Cesar C. Gauzzo, counsel to Local 427, to Hortensia Colmenares).
 
 
 3
 Shortly after receiving this information, on September 8, 1986, Ms. Colmenares filed an official complaint with the Department of Labor. Representatives of the U.S. Department of Labor and counsel for the union attempted unsuccessfully to resolve the dispute through correspondence. However, at no time during these communications did Local 427 indicate that it might change its position in this matter.
 
 
 4
 On September 1, 1987, the Secretary of Labor, pursuant to her authority under section 210 of the LMRDA,[2] commenced this action in the district court. Id. at 1317. The Secretary of Labor filed for summary judgment on substantive grounds that are not before us now. The union filed for summary judgment both on substantive grounds and based on the assertion that the suit was barred by the statute of limitations. Id. The district court granted the defendant union's motion for summary judgment on the grounds that the suit was time-barred and accordingly dismissed the plaintiff's suit. Id. This appeal followed.
 
 II.
 
 5
 In general, the structure of the LMRDA contemplates enforcement both by private citizens for alleged violations of Title I of the Act, 29 U.S.C. Secs. 411-415 (1982), and also by the Secretary of Labor for alleged violations of Title II of the Act, 29 U.S.C. Secs. 431-441. Brock v. Local 427, 682 F.Supp. at 1317-18. Section 104 of the LMDRA, the section at issue in the case before us now, provides both for private suits by union members and for suits brought by the Secretary of Labor.[3] Forline v. Helpers Local No. 42, 211 F.Supp. 315, 319 (E.D.Pa.1962). Congress thus conceived of Government suits as an integral part of the enforcement mechanism of section 104. Title I of the LMRDA makes no reference to a statute of limitations within which an action enforcing any of its sections must be brought.
 
 
 6
 The issue in this case is which statute of limitations, if any, is most appropriately applied to Title I of the LMRDA, and whether under that limitations period, the action filed by the Secretary is time-barred or timely. Because the district court dismissed the Secretary's claim as time-barred, the court had no occasion to rule on the substantive validity of the Secretary's claim. Brock v. Local 427, 682 F.Supp. at 1323. Accordingly, the statute of limitations question is the only issue before us now. We have plenary review of this issue of law.
 
 III.
 
 7
 The district court wrote without the guidance of Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), the most recent Supreme Court opinion to address the issue of which statute of limitations to apply to suits brought to enforce employees' Title I rights against their unions. The case before us was briefed and argued to the district court and this appellate court prior to the Supreme Court's decision in Reed. As the district court's decision to apply the six months' statute of limitations of Sec. 10(b) of the NLRA's prohibition of unfair labor practices is inconsistent with Reed, the district court is clearly incorrect under current law.[4] Since Reed, while vitiating the reasoning of the district court, dealt only with the appropriate statute of limitations for private actions brought under section 101(a)(2) of the LMRDA,[5] it does not control on the issue now before this court: what statute of limitations, if any, should be applied to section 104 of the LMRDA to govern Government suits brought for a public purpose. Past precedents dictate that no statute of limitations should be applied to section 104 suits brought by the Government to protect the public interest.
 
 
 8
 As a general matter, no statute of limitations will be applied in civil actions brought by the Government, unless Congress explicitly imposes such time limitations. Guaranty Trust Co. v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 788-89, 82 L.Ed. 1224 (1938)[6]; Glenn Electric Co., Inc. v. Donovan, 755 F.2d 1028, 1033 (3d Cir.1985) (citing the principle but declining to apply it in an action by the Department of Housing and Urban Development against a contractor). This principle, expressed in the maxim, nullum tempus occurrit regi (time does not run against the king) was settled as early as 1840 in United States v. Knight, 39 U.S. (14 Pet.) 301, 315, 10 L.Ed. 465 (1840). In that case, the court recited the general rule in England governing limitations running against the Crown.
 
 
 9
 [W]here an act of parliament is made for the public good, the advancement of religion and justice, and to prevent injury and wrong, the king shall not be bound by such act, though not particularly named therein. But where a statute is general, and thereby any prerogative, right, title or interest is divested or taken from the king, in such case he shall not be bound; unless that statute is made, by express words, to extend to him. It is a settled principle, that the king is not, ordinarily, barred, unless named by an act of limitations.
 
 
 10
 Id. at 315. The doctrine continues to have vitality on public policy grounds "that the public interest should not be prejudiced by the negligence of public officers, to whose care they are confided." Id. Accord Block v. North Dakota ex rel. Board of University and School Lands, 461 U.S. 273, 290, 103 S.Ct. 1811, 1821, 75 L.Ed.2d 840 (1983) (quoting the principle but declining to apply it to an action by a state against the federal Government); Costello v. United States, 365 U.S. 265, 281, 81 S.Ct. 534, 542-43, 5 L.Ed.2d 551 (1961) (where the Government sought to divest a naturalized citizen of his citizenship, laches and statute of limitations did not apply); Guaranty Trust Co., 304 U.S. at 132, 58 S.Ct. at 788-89. (1938) (quoting the principle but declining to apply it to an action brought out of time by a foreign Government); United States v. Nashville, Co. & St. L. Ry. Co., 118 U.S. 120, 126, 6 S.Ct. 1006, 1008-09, 30 L.Ed. 81 (1886) (no statute of limitations applied when the Government held bonds in trust for public use).
 
 
 11
 Another line of authority extends this principle to include those situations where the Government sues to enforce public rights. In United States v. Summerlin, 310 U.S. 414, 416-17, 60 S.Ct. 1019, 1020-21, 84 L.Ed. 1283 (1940), where the Federal Housing Administrator filed a claim against an individual's estate, the Court held that the Government is not bound by a limitations period when suing in its Governmental capacity whether the action is filed in state or federal court. In Summerlin, the court reasoned that "[w]hen the United States becomes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute of limitations." Id. at 417, 60 S.Ct. at 1020.
 
 
 12
 In the case at bar, we are confronted with an issue for which there is no precise precedent, a recurrent experience when interpreting the meaning of legislation. Although the parties have properly relied on what they believe are the closest adjudicated analogies, neither party has cited a case which is directly on point--where the Secretary of the Department of Labor sued under Title I of the LMRDA and where the suit was dismissed on the ground that the Government failed to comply with the statute of limitations.
 
 
 13
 The cases we have cited express the abstract principle that in certain situations, no statute of limitations runs against the Government. However, the factual situations described in these cases, are different from the facts in the present case. Accordingly, we must factually analyze and distill the instant case to determine whether it is appropriate to apply the principle to the present action. Thus, this case involves what thoughtful scholars call "the anatomy of [a] precedent."[7] While in the case at bar, we think that this general principle tilts strongly in the Government's favor, we recognize that all of the cases cited by the parties (or the concurrence) involve different factual situations or statutory settings. Many of the cases cited in the concurrence do not involve the Government as a litigant[8] and some of the cases which we cite involve statutes which have legislative histories different from that of the LMRDA.[9] In fact, we are dealing with what Justice Cardozo has called the interstitial spaces of the law.[10] Though we find the concurrence somewhat myopic in its reading of the most analogous cases, the position taken is plausible.
 
 
 14
 In our view, the deficiency of the concurrence is the great weight it gives to those cases involving a dramatically different factual or statutory setting, its reliance on these cases to conclude that the Government's role here is akin to a private action suit, and its conclusion that there is no public interest at risk. The critical issue here--for both the majority and the concurrence--is whether the Government was "acting in its Governmental capacity" and "asserting its claim in that right" or whether the Government was acting in what the concurrence claims was nothing more than a "dispute between two [private] parties, Ms. Colmenares and Local 427." Concurring Op. Typescript at 3. In determining whether this litigation involves a public or private issue, the concurrence relies primarily on U.S. v. Beebe, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121 (1888). In Beebe, the Attorney General brought a suit in equity allegedly on behalf of the United States to set aside and cancel certain patents for about 480 acres of land issued in favor of Roger Beebe, who had died "many years ago." Id. The suit was commenced 45 years after the cause of action arose.
 
 
 15
 In Beebe, the Government admitted that the United States "did not own the land embraced in [the land patents] but that on the contrary, said land was legally appropriated by other persons and was therefore segregated from the public domain." Id. at 339, 8 S.Ct. at 1084. Beebe involved nothing more than a private dispute as to which of two families owned the land--the Philbrook heirs or the Beebe heirs. Id. at 339-40, 8 S.Ct. at 1084-85. No basic issue of public policy or democracy was involved; it was indistinguishable from thousands of cases to settle a title as to who owns Blackacre. Nevertheless, even in that private setting, the court felt compelled to note first that
 
 
 16
 [t]he principle that the United States are not bound by any statute of limitations, nor barred by any laches of their officers, however gross, in a suit brought by them as a sovereign government to enforce a public right, or to assert a public interest, is established past all controversy or doubt. (citation omitted).
 
 
 17
 Id. at 344, 8 S.Ct. at 1086 (emphases added). The Court recognized a narrow exception to the general rule against subjecting actions by the federal Government to statutes of limitation when such actions do not assert any public right or protect any public interest, title or property. Id. at 347, 8 S.Ct. at 1088. After a careful review of the intricacies of this land dispute, the court stressed that
 
 
 18
 this case stands upon a different footing, and presents a different question. The question is, are these defenses available to the defendant in the case where the government, although a nominal complainant party, has no real interest in the litigation, but has allowed his name to be used therein for the sole benefit of a private person?
 
 
 19
 Id. (emphases added).
 
 
 20
 The concurrence draws an analogy between the present action by the Secretary on behalf of Ms. Colmenares, and the problems of the Philbrook heirs in a land dispute and concludes that the issue here merely involves the "assertion of Colmenares's private rights". Concurring Op. Typescript at 9. To rely on the Beebe case as the foundation of one's analysis, and to assume that the Government is a "nominal complainant" who has "no real interest in the litigation" is to rely on an analogy which does not possess a high degree of similarity between the situations compared.[11]
 
 
 21
 We differ completely with the concurrence's minimization of such an important aspect of union democracy and its reduction of the issue here to merely one of a private right. Even though suits under the LMRDA frequently have specific private as well as public beneficiaries, the touchstone remains the fact that public policies are served and the public interest is advanced by the litigation, and the fact that the litigation has private beneficiaries as well does not detract from the public nature of the suit. E.g., Marshall v. Intermountain Electric, 614 F.2d 260, 262-63 (10th Cir.1980). Accord Nabors, 323 F.2d at 688-89. Instead, what is involved here is a classic example of a "public right" and a "public interest." The legislative history of the LMRDA repudiates the concurrence's position. The public significance Congress attributed to the Act is revealed in the well known terms it used in debating the merits of the legislation, such as "democracy" and "Bill of Rights," which have always had a public interest imprimatur.
 
 
 22
 The debates on the Labor-Management Reporting and Disclosure Act reveal Congressional concerns about the prevalence of undemocratic procedures in some American labor unions and the impact of these practices on the public. The Senate's Report on the legislation noted a substantial public interest intertwined in the internal problems of the labor unions. See S.Rep. No. 187, 86th Cong., 1st Sess. 6, reprinted in 1959 U.S.Code Cong. & Admin.News 2318, 2323. When speaking on the Senate floor in 1959, then Senator John F. Kennedy explained that a bipartisan select committee was established to look into improper activities in the labor or management fields, "because of recurring reports of abuses of power on the part of both labor and management to the detriment of the welfare of employees, employers, and the public." 105 Cong.Rec. 5983 (1959). Senator Ervin of North Carolina, a member of the McClellan committee which investigated the union abuses, viewed the legislation as an attempt to correct the illegal practice of "corrupt union leaders and equally corrupt management ... enter[ing] into agreements under which the union leaders had 'sold down the river' those whom they were supposed to represent." 105 Cong.Rec. 6410 (1959).
 
 
 23
 Accordingly, Congress enacted the LMRDA, to curb "breach[es] of trust, corruption, [and] disregard of the rights of individual employees" in the American labor movement. 29 U.S.C. Sec. 401(b). One of the means chosen by Congress to avert these abuses is to expose union operations to the scrutiny of union members and the public. To that end, the LMRDA requires unions and union officers to disclose a variety of financial and other information concerning union activities. In the case at bar, the Secretary of Labor, on behalf of Ms. Colmenares was seeking to obtain information concerning her union's activity.
 
 
 24
 Perhaps after making the above distinction as to the extensive legislative history on the public interest in Title I and the private issues involved in the land transaction in Beebe, no more need be said. However, there are other cases arising in a somewhat different factual context that provide further substance to our position as to the public purposes involved in the litigation initiated by the Secretary of the Department of Labor.
 
 IV.
 
 25
 Recent cases that apply the public purpose doctrine include actions in which the Government sues to protect individual rights as well as public rights. As stated in Occidental Life Insurance v. EEOC, 432 U.S. 355, 368-69, 97 S.Ct. 2447, 2455-56, 53 L.Ed.2d 402 (1977), no statute of limitations applies in Government suits brought by the EEOC to avoid conflicts that could result while the agency agency exhausts conciliatory efforts before filing suit. In Occidental, the EEOC brought a Title VII action against a private employer based on sexual discrimination. Justice Stewart reasoned that to require the EEOC to comply with the state's statute of limitations would interfere with the agency's administrative duties. He cited earlier decisions holding that "[s]tate limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." Id. at 367, 97 S.Ct. at 2455 (citing Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 701, 86 S.Ct. 1107, 1110-11, 16 L.Ed.2d 192 (1966); Board of County Comm'rs v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939)). In Occidental, the Court rejected a state statute of limitations finding that no statute of limitations should apply to the EEOC action.
 
 
 26
 In EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69 (3d Cir.), cert. dismissed, 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984), this court recently applied the public purpose doctrine to find that even if laches applied against the EEOC, a question that the Court did not reach but labelled "problematic," the nine-year period between the first filing of an individual charge and the EEOC's filing of a complaint would not constitute laches, absent a showing of prejudice. Id. at 80. In Great Atlantic & Pacific Tea Co., this court considered that Occidental continued to stand for the proposition that no statute of limitations applied to the EEOC in such an enforcement action. Id. at 73. This court deemed that an absence of time limits was appropriate and important given the EEOC's duty to attempt reconciliation before suit and to engage in often complex investigations. Id. at 73. This court also emphasized that the EEOC was vindicating public as well as private interests when it brought a discrimination suit under Title VII, a factor that the court stated the district court must consider in evaluating the defendant's laches defense. Id. at 81.
 
 
 27
 The reporting and disclosure requirements of the LMRDA are principally contained in Title II of the Act. 29 U.S.C. Secs. 431-441 (1982). However, the disclosure requirement at issue in this case is found in Title I, the Act's "Bill of Rights" section. 29 U.S.C. Secs. 401-415. As the Court noted in Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 629-30, 102 L.Ed.2d 665 (1989), Title I of the LMRA was enacted, in part, because it was recognized that the NLRA, including those provisions defining unfair labor practices, had failed to provide the protections for free speech and other rights of union members "that Congress considered essential to the democratic operation of unions." Reed involved a claim by a union member under section 101(a)(2) of Title I of the LMRDA that the union to which he belonged had violated his right to free speech on union matters. Id. 109 S.Ct. at 624. The union members' claim in Reed is thus similar to Ms. Colmenares' claim here that she has a right to receive copies of collective bargaining agreements: both the right to speak and the right to receive information are intertwined procedural rights that foster union democracy. The right to receive information, like the right to speak one's mind, is one of the rights protected by the first amendment. See Kleindienst v. Mandel, 408 U.S. 753, 762-63, 92 S.Ct. 2576, 2581-82, 33 L.Ed.2d 683 (1972) (the first amendment protects the right to receive information as well as the right to dispense it). Like the right to speak, a guaranteed access to information about other collective bargaining agreements is essential to a democratic labor movement, since only informed union members can raise meaningful challenges to the decisions of the union leadership.
 
 
 28
 However, unlike Reed, the present action was brought by the Secretary of Labor on behalf of the union member, rather than by the union member herself. We are of the view that this action is not subject to any statute of limitations. This result is fully supported by Occidental, 432 U.S. at 355, 97 S.Ct. at 2449, and its progeny. The rule in Occidental, that in instances where a federal statute creating a cause of action does not specify a limitations period, state limitations periods will not be borrowed if their application would not comport with the federal policies underlying the statute, has been adopted by a number of Courts of Appeals. E.g., Donovan v. West Coast Detective Agency, 748 F.2d 1341, 1343 (9th Cir.1984) (the Ninth Circuit specifically rejected the borrowing of a state statute of limitations in the absence of a specific federal statute of limitation, where the Secretary of Labor sued to enforce significant public rights and interests in protecting union activity); Donovan v. Square D Company, 709 F.2d 335, 337, 341 (5th Cir.1983) (state statute of limitations inapplicable to an action by OSHA in a retaliatory discharge case; state statutes are not applicable where the Government sues to vindicate a public right and where implication of state statute would frustrate national safety policy); Marshall v. Intermountain Electric Co., Inc., 614 F.2d 260, 262-63 (10th Cir.1980) (declining to apply a statute of limitations to a suit by the Secretary of Labor to enforce an employee's OSHA rights as such a suit vindicates public as well as private rights); Nabors v. N.L.R.B., 323 F.2d 686, 688 (5th Cir.1963), cert. denied, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964) (United States is not bound by a state statute of limitations or subject to the defense of laches when suing to enforce a public right such as back pay awarded for discriminatory discharge for union activity). These cases remove Government suits vindicating a public purpose from both the general rule that state statutes of limitation will be borrowed where federal legislation is silent and from its exception that, where a state statute would frustrate federal policies, the most closely analogous federal statute may be inferred.[12] Intermountain Electric Co., 614 F.2d at 262.
 
 
 29
 The district court, in the case at bar, acknowledged the public purpose doctrine and stated that the statute of limitations would commence on different dates for the Secretary of Labor and for the private plaintiffs. Brock v. Local 427 Int'l Union of Elec., Radio & Mach. Workers, 682 F.Supp. 1315, 1323 n. 16 (D.N.J.1988). Thus, the district court held that for private plaintiffs, the statute would start to run upon the occurrence of the alleged violation, but for the Secretary of Labor, the statute would only begin to run upon notice to the Secretary of the alleged violation. Id. The district court considered that a separate rule for the commencement of the statute of limitations was necessary to achieve the Department of Labor's "administrative duty to conduct pre-enforcement investigation and settlement attempts." Id. However, according to the district court, "federal statutes of limitation are more appropriately applied than are state statutes in the absence of any statute in federal legislation." Id. at 1320 (emphasis in original). We find this tolling of the statute an insufficient expression of the public purpose doctrine and an insufficient accommodation to the important public interests served by allowing the Secretary of Labor to protect section 104 rights.
 
 
 30
 Furthermore, with the exception of Occidental, which we do not read as narrowly as the district court does, none of the cases relied on by the district court involved Government suits to serve a public purpose. E.g., Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (civil RICO action)[13]; Delcostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (employee's suit under the LMRA for employer's unfair labor practice and for union's breach of duty of fair representation); Local Union 1397, United Steelworkers of America v. United Steelworkers of America, AFL-CIO, 748 F.2d 180 (3d Cir.1984) (local union's action against national union challenging imposition of disciplinary action); Grasty v. Amalgamated Cloth. & Textile Workers Union, 828 F.2d 123 (3d Cir.1987) (local union members brought action against international union and intermediate union for breach of their constitution and bylaws and for violation of federal racketeering statute and federal labor statute), cert denied, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988).[14] The district court either does not cite or dismisses without discussion relevant case law on the public purpose doctrine. Brock v. Local 427, 682 F.Supp. at 1322 (dismissing West Coast Detective Agency on the grounds that it did not cite Delcostello, one of the private plaintiff cases).
 
 
 31
 Like the EEOC in employment discrimination, the Secretary of Labor, when faced with an individual's claim that a union has violated her Title I rights, may often attempt to resolve the dispute through investigation and reconciliation before bringing suit.[15] The necessity of this process was recognized by the district court, as noted above, and did in fact occur in the instant case. Brock v. Local 427, 682 F.Supp. at 1317 (discussing the Department of Labor's attempts to resolve this dispute). This process may be time consuming, and, as Occidental states, these conciliatory Government functions could be threatened by a fixed statute of limitations. 432 U.S. at 367-68, 97 S.Ct. at 2454-55. Moreover, just as Title VII suits serve the "public interest" in curtailing racial discrimination, so suits under Title I serve the "public interest" in preserving democracy within labor unions. As the Fifth Circuit pointed out in Nabors, the fact that the Government, in suing to protect the public interest in the federal regulation of labor-management relations, confers a benefit on private persons does not detract from such suits' "public purpose." 323 F.2d at 688-89 (suits under the NLRA).
 
 
 32
 For the foregoing reasons, we hold that where, as here, the Secretary sues to enforce Title I rights of access to information or freedom of speech that foster a democratic labor movement, the public purpose doctrine applies and no statute of limitation runs against the Secretary. Accordingly, the Secretary's action should not have been dismissed as time-barred.
 
 
 33
 As this Court did in Great Atlantic & Pacific Tea Co., we leave open the question of whether laches can apply as a defense against the Government suing to protect such public interests. The defendant is free to argue in the district court that the Secretary was dilatory and that it suffered actual prejudice thereby, the test in this circuit for laches. Great Atlantic & Pacific Tea Co., 735 F.2d at 80. We express no opinion as to the outcome of such an argument.
 
 V.
 
 34
 The judgment of the district court dismissing the plaintiff's action as time-barred will be reversed, and this case will be remanded for further proceedings consistent with this opinion.
 
 GARTH, Circuit Judge, concurring:
 I.
 
 35
 Although I reach the same result in this case as my colleagues, I disagree totally with the "no statute of limitations" analysis they have adopted. It is because of the importance of this issue to the bench and to the bar, i.e., what statute of limitations is to be employed in cases brought under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. Sec. 401 et seq., that I have been compelled to write separately.
 
 A.
 
 36
 There is no logical support in Supreme Court or Third Circuit decisions for the position the majority has adopted. Worse, the majority opinion ignores our own intra-circuit jurisprudence by failing to recognize the effect of Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123 (1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988), a valid circuit precedent that has great relevance here and is established and continuing authority for a state-related statute of limitations.
 
 
 37
 Thus, I agree with my colleagues that the Secretary of Labor's suit on behalf of Ms. Colmenares is, under the given facts, not time barred: it falls within New Jersey's two-year statute of limitations for personal injury. N.J.S.A. 2A:14-2.[1] Alternatively, the alleged breach involved here may be construed as contractual, in which case New Jersey's six-year statute of limitations for contract claims applies.[2]
 
 B.
 
 38
 In either event, however, I find no support here for a holding of no statute of limitations. The Secretary's evocations of the lofty goals and flowery language of the LMRDA (maj. op. 612-613), do not themselves a "public purpose" make. The majority opinion concedes that G.P. Reed v. United Transportation Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (requiring the application of a state statute of limitations) and the instant case both fall under Title I of the LMRDA and both involve the right of free speech in union matters--a right protected by the First Amendment. But it nevertheless seeks to distinguish Reed from this case on the grounds that the present case is a "public purpose" case as to which no statute of limitations attaches.
 
 
 39
 The majority does not explain why a difference in result should obtain between these two cases, other than by stating, ipse dixit, that, "unlike Reed, the present action was brought by the Secretary of Labor on behalf of the union member, rather than by the union member herself" (maj. op. 614). The majority attempts to support this conclusory statement by claiming that the instant case is a "public purpose" case (if this is so, why isn't Reed a "public purpose" case?) to which no statute of limitations attaches.
 
 
 40
 I suggest that the majority opinion has erred in straining to transform the present dispute between two private parties--Ms. Colmenares and Local 427--into a "public purpose" exercise of sovereignty, such as may be raised without regard to any statute of limitations. See U.S. v. Beebe, 127 U.S. 338, 346-47, 8 S.Ct. 1083, 1087-88, 32 L.Ed. 121 (1888). There is no similarity between Ms. Colmenares's action and a case like Occidental Life Insurance Co. of Calif. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (see maj. op. 613, 614-15; and my discussion infra 12 et seq.) where the procedural requirements and investigation and conciliation mandates of the government agency involved are such that a statute of limitations would make its litigation work virtually impossible.
 
 
 41
 Sections 104 and 210 of the Act, 29 U.S.C.A. Secs. 414, 440 (1985) clearly permit the Secretary of Labor to bring an action on behalf of a private litigant seeking to obtain copies of certain contracts signed by his or her union.[3] Nevertheless, both the Supreme Court in Reed, 488 U.S. 319, 109 S.Ct. 621, at 625-28, 102 L.Ed.2d 665 (1989) and we ourselves in Grasty, 828 F.2d at 131-33, have recently reconfirmed the requirement, that where no specifically defined federal interest of the sovereign is involved--and there is none here--we must look to the applicable state statute of limitations. In doing so, we do no more than follow the dictates of established Supreme Court precedent.
 
 C.
 
 42
 In U.S. v. Beebe, supra the Attorney General, on behalf of the United States, sought to set aside certain property patents that had been issued in favor of Beebe. Among the defenses raised against the United States was the defense of a statute of limitations. In affirming the dismissal of the action, the Court, in language that is exceedingly relevant here, stated:... an inspection of the record shows that the Government, though in name the complainant, is not the real contestant party to the title or the property in ... controversy. It has no interest in the suit, and has nothing to gain from the relief prayed for, and nothing to lose if the relief is denied. The bill itself was filed in the name of the United States, and signed by the Attorney General on the petition of private individuals, and the right asserted is a private right, which might have been asserted without the intervention of the United States at all.
 
 
 43
 * * * * * *
 
 
 44
 We are of the opinion that when the Government is a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title, or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court ... will not be restrained from administering the equities existing between the real parties by any exemption of the Government designed for the protection of the rights of the United States alone. The mere use of its name in a suit for the benefit of a private suitor cannot extend its immunity ... to said private suitor ... nor stop the court from examining into and deciding the case according to the principles governing courts ... in like cases between private litigants.
 
 
 45
 Beebe, 127 U.S., at 346-47, 8 S.Ct. at 1087-88.
 
 
 46
 In the instant case, following Beebe's instruction, the majority's flight into "public purposes/rights/interests" pieties, (maj. op. e.g., at 610, 612-613) is unjustified and flawed. The proper inquiry must lead us to apply, at the least, New Jersey's two-year statute of limitations for personal injury or, at the most, New Jersey's six-year statute of limitations for contractual actions. In either event, the district court's decision cannot be sustained because the action is not time barred. To that extent, and to that extent only, I concur in the majority's judgment.
 
 II.
 
 47
 Conflicts over internal union governance and procedures and disputes between union members and their unions were once considered part and parcel of labor law as a whole. Accordingly, the short six month statute of limitations prescribed by DelCostello, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), was considered especially apt in view of the strong national policy in favor of the rapid resolution of troublesome and potentially disruptive labor conflicts. Speedy resolution served the public purpose. Indeed, the very importance to the public's purposes and needs of labor peace provided a reasonable and necessary justification for an especially short statute of limitations, as contrasted with an endless, no statute of limitations. However, where the matters at issue do not trench upon the collective bargaining relationship between the employer and the union (and hence its member employees) the Supreme Court has now instructed us, that even in an indisputable public interest case (as "public interest" has now been defined by the majority) that the Sec. 10(b) six-month statute of limitations is inapplicable. Reed, supra.
 
 
 48
 No one doubts that the LMRDA was intended to serve a "public purpose." However, in terms of the LMRDA statute of limitations, the appropriate question to be asked is not "is a 'public interest' or 'public purpose' involved?" but, rather, "is the collective bargaining relationship between the employer and the union involved?" Reed; Grasty; supra.
 
 
 49
 The majority opinion attempts to equate "public interest" and "public rights" with the relationship between a union and its members (maj. op. 612) by defining the public purpose/interest of union self-government and union internal democracy by assuming that the Bill of Rights has been incorporated into each union charter. But in enacting the LMRDA, Congress was not "simply moving to enforce the First Amendment ... [one of the Rights] ... [it wanted] to ensure that the unions were truly and effectively the representatives of their members for the purpose of collective bargaining." Reed, 109 S.Ct., at 631 (White, J., dissenting). In this sense, the LMRDA's "public interests" did not enshrine the Secretary of Labor as a privileged plaintiff when he or she stepped into the shoes of an individual union member plaintiff.
 
 
 50
 Rather, as Justice Marshall has astutely observed in regard to union self-governance, "[u]nion rules, by contrast [to the Bill of Rights], are valid under Sec. 101a(2)[4] so long as they are reasonable; they need not pass the stringent tests applied in the First Amendment context." United Steelworkers of America v. Sadlowski, 457 U.S. 102, 111, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982) (interpreting legislative history and textual meaning of LMRDA). Instead, key organizational and membership rights are, "for the most part, collective rights, rights to act in concert with one's fellow employees; they are protected not for their own sake but as an instrument of the national labor policy of minimizing industrial strife 'by encouraging the practice and procedure of collective bargaining.' " Emporium Capwell Co. v. Western Addition Community Org., 420 U.S. 50, 62, 95 S.Ct. 977, 984-85, 43 L.Ed.2d 12 (1975) (quoting 29 U.S.C. Sec. 151 (1982)).[5]
 
 
 51
 Thus, after Reed, we may no longer apply the six-month unfair labor practice statute of limitations of Sec. 10(b) to non-collective bargaining issues being litigated between a union and one of its disaffected members. In considering what other statute of limitations, if any, to invoke, however, we must characterize the nature of the relationship which the plaintiff alleges has been violated. Only then can we adequately determine whether Ms. Colmenares (or the Secretary) claims personal injury at the hands of the union, breach of a contractual relationship, a civil rights violation, or the like.
 
 
 52
 In order to settle upon the most appropriate statute of limitations, the most suitable analogy is to be found in those Supreme Court cases that have steadfastly applied state personal injury statutes of limitation whenever a statutory violation of 42 U.S.C. Secs. 1981, 1983, or 1985 has occurred. Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (general personal injury statute of limitations governs Sec. 1983 claims); Goodman v. Lukens Steel, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (personal injury statute of limitations governs Sec. 1981 claims); Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); Pratt v. Thornburgh, 807 F.2d 355 (3d Cir.1986), cert. denied, 484 U.S. 839, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987) (personal injury statute of limitations governs Sec. 1985 claims).
 
 
 53
 But even if I am in error in selecting the personal injury statute--and I do not think I am--the alternative is not "no statute of limitations" as espoused by the majority, but rather New Jersey's residual contract statute of limitation of six years.[6] Because the union/union member relationship is essentially a contract, a union may, for example, seek to enforce its rules against members[7] and may assume that contractual mutual reliance operates between a union and its members.[8] In the instant case, it could be argued that Ms. Colmenares's right to copies of her union's various contract agreements with other companies may be inferred from her contractual rights as a member of her union. But see note 3, supra.
 
 
 54
 What is not possible, however, is for this court suddenly to introduce a "public right" or "public interest" or "public purpose" into a union/union member contract relationship--just by virtue of a suit being brought in the name of the Secretary of Labor. As another Circuit, following U.S. v. Beebe, supra, has noted,
 
 
 55
 An action which, although brought in the name of the United States, involves no public rights or interests may be subject to a state statute of limitations. In such a case the federal government functions as a mere conduit for the enforcement of private rights which could have been enforced by the private parties themselves.
 
 
 56
 Marshall v. Intermountain Electric Co., Inc., 614 F.2d 260, 262 n. 3 (10th Cir.1980) (citations omitted). The majority's analysis that, where a statute is silent, no statute of limitations bars an action brought by the government, must necessarily lead to individual plaintiffs foregoing individual claims in favor of claims asserted by authorized government officials. But neither Beebe nor Reed suggests such an improbable and anomalous result (maj. op. 610).
 
 
 57
 Because no legitimate or rational "public purpose" has been, or can be, identified with the assertion of Colmenares's private right, it is immaterial for statute of limitations purposes whether the action was filed by Ms. Colmenares in her own right, or by the Secretary, to vindicate Ms. Colmenares's right. Rather, because the claim at issue here derives from a violation of a statute that calls for application of the state statute of limitations for personal injury--here, two years--the right to maintain an action on Ms. Colmenares's behalf was not time barred when the complaint was filed fifteen months after the cause of action accrued. A fortiori the same result follows if the claim and the Sec. 104 right in question are understood as contractual and that applicable statute of limitations is applied--in this case, six years.
 
 III.
 
 58
 The majority opinion rushes to analogize between EEOC/Title VII suits by the government, such as was at issue in Occidental (maj. op. 613-614), and the Secretary of Labor's suit here. The analogy, however, is inappropriate. I noted above that the procedural requirements and investigation and conciliation mandates of the EEOC are such that a statute of limitations would make its litigation work virtually impossible. As the Occidental Court observed,
 
 
 59
 the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal noncoercive fashion. Unlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties.
 
 
 60
 Occidental, 432 U.S., at 368, 97 S.Ct. at 2455.
 
 
 61
 There is nothing in the Secretary of Labor's mandate in Secs. 104 or 210 of the LMRDA, which authorizes the Secretary to sue on behalf of trade union members, that even remotely resembles the "public purpose" mandate to which the EEOC must respond.
 
 
 62
 The Occidental court further noted that "[s]tate limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." Id., at 367, 97 S.Ct. at 2455 (citations omitted). But whereas Congress intended that the EEOC "have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit" Id., at 368, 97 S.Ct. at 2455 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017-18, 39 L.Ed.2d 147 (1974)), the LMRDA is bereft of any comparable function for the Secretary of Labor.[9] Hence, absent any such comparable requirements, we have been instructed to follow the general rule and borrow the state limitations period. See, U.S. v. Beebe, supra and G.P. Reed v. United Transportation Union, supra.
 
 
 63
 Obviously, as I have noted above, there is a public interest in encouraging honest and democratic unions. If there were no such interest, Congress would not have legislated in this area, and, at the very least, the government, through the offices of the Secretary, would never involve itself on behalf of aggrieved plaintiffs. In order to reach its "no statute of limitations" conclusion however, I suggest that the majority has misapplied the definition of "public purpose" to an action such as this one, which merely seeks to settle a dispute having "little or no relation to the day to day relationship between [Local 427] and its members, on one hand, and [Colmenares] on the other." Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d at 133 (holding that the 4-year Pennsylvania statute for breach of contract rather than the 6-month DelCostello statute of limitation was applicable to a claim seeking refund for a double dues deduction and failure to rebate dues to a union Local).
 
 
 64
 Even Occidental, 432 U.S. at 367, 97 S.Ct. at 2455, involving the EEOC, and relied on so heavily by the majority here, referred to "public purpose" cases which were subject to state time limitations and which were upheld by the Court. Among these were: Runyon v. McCrary, 427 U.S. 160, 179-82, 96 S.Ct. 2586, 2598-2600, 49 L.Ed.2d 415 (1976) (Civil Rights Act of 1866, Sec. 1981); Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-07, 86 S.Ct. 1107, 1112-14, 16 L.Ed.2d 192 (1966) (Sec. 301 of the Labor Management Relations Act properly governed by state statute of limitations for breach of contract where part of claim involved contracts not in writing); O'Sullivan v. Felix, 233 U.S. 318, 324, 34 S.Ct. 596, 598-99, 58 L.Ed. 980 (1914) (Civil Rights Act of 1871, Sec. 1983); Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (portions of Sherman Antitrust Act for which no statute of limitations specified); Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895) (Patent Act).
 
 
 65
 Moreover, if the presence of a generalized "public purpose"--such as was found in the aforementioned cases--is insufficient to overcome an otherwise applicable state statute of limitations, then surely neither is the naming of the Secretary as plaintiff. That without more, plainly "cannot be the test, for it would exalt form (who brings the suit) over substance (whom the suit directly benefits)" Occidental, 432 U.S., at 383, 97 S.Ct. at 2463 (Rehnquist, J., dissenting).
 
 IV.
 
 66
 Finally, though by no means of less importance, it ill behooves the majority to ignore our Third Circuit precedent. In Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123 (1987), cert. denied 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988) issues of the same genre as the issues presented here, required that we employ the relevant state statute of limitation. In Grasty, among other claims, the complainants sought reimbursement of double dues deductions and sought a rebate to the shop association of part of the dues collected from them.
 
 
 67
 Because the "double dues" deductions and rebate issues bore no "family resemblance" to unfair labor practice charges under the NLRA, and bore no family resemblance to claims of a breach of the duty of fair representation, the need for speedy resolution of those issues was not present. Accordingly, we held that the appropriate statute of limitations was Pennsylvania's four year statute of limitations for breach of contract. Id., at 132-33. We did so, because it was non-collective bargaining issues that were at stake. Indeed, this holding has been effectively confirmed by Reed, which required a state statute of limitations be applied to a Sec. 101(a)(2) (29 USC Sec. 411(a)(2)) freedom of speech violation.
 
 
 68
 Here, as in Grasty, Colmenares's request for copies of the union contracts bears no "family resemblance" to collective bargaining issues. A refusal by the union to furnish copies of contracts with other employers bears no more resemblance to an unfair labor practice or a breach of the duty of fair representation than did the issue in Grasty of double deductions and rebates. Moreover, despite the strained arguments of the majority that the issue here has a "public purpose" or "public interest," I can perceive no difference between the nature of the issues in Grasty and the issue here.[10] Implicit in neither is a public interest or purpose of the Occidental variety and no public interest or purpose differentiating the Secretary from a private plaintiff has been demonstrated. Grasty should therefore provide the precedent for our holding and opinion today.
 
 
 69
 Unfortunately, Grasty has been misread by the majority and, hence, has not been accorded the precedential value inhering in its decision. Grasty presented a series of breaches of the duty of fair representation, such as claims that the union fraudulently engineered a strike vote; failed to pursue the grievances of terminated workers; failed to protest increases in medical deductions; and failed to conduct elections. The plaintiffs in Grasty, however, repudiated their own complaint's allegations of breach of the duty of fair representation and argued instead that the national union's actions violated the union constitution. Judge Sloviter, writing for the court, held that because the charged acts resembled collective bargaining issues subject to DelCostello's six-month statute of limitations, Grasty was subject to a six-month statute of limitations, even though the claims arose from a breach of the union's constitution. Grasty, 828 F.2d at 132.
 
 
 70
 Grasty also held that a refusal by the union to provide the plaintiffs with copies of its collective bargaining agreement and copies of its constitution was subject to the DelCostello six-month bar. This latter holding, following Local 1397, United Steelworkers of America v. United Steelworkers of America, 748 F.2d 180, 183 (3d Cir.1984), was the only holding of Grasty disavowed by Reed, 109 S.Ct. at 625 note 3, which requires the application of a state statute of limitations to a LMRDA free speech claim under Sec. 101(a)(2).
 
 
 71
 Thus, the implied reversal of Grasty by Reed (maj. op. 615, note 14) did not overturn Grasty's holding with respect to double deductions and rebates. 828 F.2d at 132-34. That analysis applied the state statute of limitations and did not rely on Local 1397. If anything, Reed would indicate that all LMRDA Title I disputes other than those involving collective bargaining issues (and thus including Colmenares's dispute in question here) must have state statutes of limitations applied.
 
 
 72
 In sum, the majority opinion has misread and ignored Grasty and has also misconstrued the thrust and applicability of Occidental. It does both on the grounds that there is implicated here a "public purpose" so substantial that, in vindicating it, the Secretary of Labor should be bound by no statute of limitations. Although I agree there is a " 'public interest' in preserving democracy within labor unions," (maj. op., at 616), that issue is not presented in the record before us. Moreover, even if it were, I fail to see how it matches the " 'public interest' in curtailing racial discrimination" in an EEOC context. Id.
 
 
 73
 The fact that an agent of government, the Secretary of Labor, rather than Ms. Colmenares herself has brought suit here simply makes no difference in assessing the timeliness of the action. The majority opinion tells us, "Nullum tempus occurit regi"--time does not run against the king (maj. op. 610). The proper response was provided quite some time ago: "But this case is not brought by the sovereign to protect some right attaching to sovereignty, and therefore cannot claim the benefit of the above rule." Chicago & N.W. Ry. Co. v. Ziebarth, 245 F. 334, 337 (8th Cir.1917). See also, U.S. v. Beebe, 127 U.S. at 346, 8 S.Ct. at 1087-88 ("the rule that the statute of limitations does not run against the State, has no application to a case ... when the State, though a nominal party on the record, has no real interest in the litigation, but its name is used as a means of enforcing the rights of a third party who alone will enjoy the benefits of a recovery").
 
 V.
 
 74
 In my opinion, the correct statute of limitations to apply is New Jersey's two-year personal injury statute of limitations or, at the very most, its six-year contract statute of limitations. In all events, however, a state statute of limitations as Reed instructs, must be prescribed. Because the majority has failed to follow Reed and our own precedent in Grasty, I cannot join its analysis, even though I concur with its holding that the Secretary's action here is not time barred.
 
 
 
 [1]
 In accordance with Fed.R.Civ.P. 25(d)(1), the current Secretary of Labor Elizabeth Dole has been substituted as appellant for former Secretary Ann McLaughlin
 
 
 [2]
 Section 210 of the LMRDA, 29 U.S.C. Sec. 440, provides as follows:
 Whenever it shall appear that any person has violated or is about to violate any of the provisions of this subchapter, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate. Any such action must be brought in the district court of the United States where the violation occurred or, at the option of the parties, in the United States District Court for the District of Columbia.
 
 
 [3]
 Section 104 of the LMRDA, 29 U.S.C. Sec. 414, provides:
 It shall be the duty of the secretary or corresponding principle officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor organization other than a local organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which shall be available for inspection by any member or by any employee whose rights are affected by such agreement. The provisions of section 440 of this title shall be applicable in the enforcement of this section.
 (Emphasis added).
 
 
 [4]
 Reed makes clear that the borrowing of state statutes of limitations where federal legislation is silent remains the rule, not the exception, for private actions, unless they would frustrate or significantly interfere with federal policies. 109 S.Ct. at 623
 
 
 [5]
 Section 101(a)(2) of the LMRDA 29 U.S.C. Sec. 411(a)(2) (1982), provides:
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting....
 
 
 [6]
 This principle derives from the "great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." United States v. Hoar, 26 F.Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373) (Story, J.) quoted in Guaranty Trust, 304 U.S. at 132, 58 S.Ct. at 788-89
 
 
 [7]
 See R. Aldisert, The Judicial Process 777-861 (1976)
 
 
 [8]
 See e.g., Runyon v. McCrary, 427 U.S. 160, 179-82, 96 S.Ct. 2586, 2598-2600, 49 L.Ed.2d 415 (1976) (action by parents of African American children who were allegedly denied admission to private school, solely because of their race, in violation of the Civil Rights Act of 1866); Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-08, 86 S.Ct. 1107, 1112-15, 16 L.Ed.2d 192 (1966) (action by union to recover discharged employees' vacation pay withheld in violation of section 301 of the LMRA); O'Sullivan v. Felix, 233 U.S. 318, 321-25, 34 S.Ct. 596, 597-99, 58 L.Ed. 980 (1914) (action for damages for personal injury assault against petitioners to prevent them from voting in violation of the Civil Rights Act of 1871); Campbell v. Haverhill, 155 U.S. 610, 613-21, 15 S.Ct. 217, 218-21, 39 L.Ed. 280 (1895) (individuals sue to recover for defendant's infringement of certain rights belonging to plaintiff)
 
 
 [9]
 The EEOC was created under Title VII of the Civil Rights Act of 1964 to deal with the pervasive problem of employment discrimination. H.R.Rep. No. 238, 92nd Cong., 2d Sess. 3, (1972) reprinted in 1972 U.S.Code Cong. & Admin.News 2137-39. See Occidental Insurance v. EEOC, 432 U.S. 355, 367-68, 97 S.Ct. 2447, 2454-55, 53 L.Ed.2d 402 (1977). The NLRB was created in 1947 as an amendment of the National Labor Relations Act, which was designed to balance the bargaining power between labor and management. H.R.Rep. No. 510, 80th Cong., 1st Sess. 1, reprinted in 1947 U.S.Code Cong. & Admin.News 1135-36. See Nabors v. NLRB, 323 F.2d 686, 688 (5th Cir.1963), cert. denied, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964) ("NLRB" does not exist for the adjudication of 'private rights,' it acts in a public capacity to give effect to the declared public policy of the Act to eliminate and prevent obstructions to interstate commerce by enlarging collective bargaining)
 
 
 [10]
 See B. Cardozo, The Nature of the Judicial Process 103, 113-14 (1921)
 
 
 [11]
 Analogy does not seek proof of an identity of one thing with another but only a comparison of resemblances. J.S. Mill reduced it to a formula: Two things resemble each other in one or more respects; a certain proposition is true of one; therefore it is true of the other.... [R]eaching a conclusion by analogy has the benefit of the high degree of similarity of the compared data. The degree of similarity is always the crucial inquiry in analogies. Clearly, you cannot conclude that a partial resemblance between two entities is equal to an entire and exact correspondence
 R. Aldisert, Logic for Lawyers: A Guide to Clear Legal Thinking 91 (1989). The concurrence seeks to compare the relationship between the Attorney General and the Philbrook heirs in Beebe (a private action with no public interest) to the relationship between the Secretary of Labor and Ms. Colmenares in the instant case (a public action with a substantial public interest), concluding that since the relationship is the same, the result (the applicable statute of limitations) is the same. But as Judge Aldisert noted, the degree of similarity is always crucial in analogies. Here the degree of similarity in the concurrence's analogy is very low. In fact, the concurrence's argument might be what Judge Aldisert calls a non sequitur. See id. at 198-99.
 
 
 [12]
 Despite appellees' arguments to the contrary, we believe that the fundamental policy of preserving public rights and interests from the consequences of a government agent's delay is undermined by a fixed limitations period, whether imposed by a federal or a state statute
 
 
 [13]
 The majority in Agency Holding rejected Justice Scalia's suggestion that if state codes do not furnish an "appropriate" limitations period, there is none to apply. 483 U.S. at 169, 107 S.Ct. at 2774 (Scalia, J. concurring)
 
 
 [14]
 We disagree with the concurrence's position that Grasty is dispositive of the case at bar. See Reed, 109 S.Ct. at 625 n. 3 (noting, in identifying the Circuit split on the statute of limitations issue, that Local 1397, United Steelworkers of America v. United Steelworkers of America, 748 F.2d 180 was one of the cases in accord with Reed v. United Transp. Workers, 828 F.2d 1066 (4th Cir.1987), the case the Supreme Court overturned in Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)). See also 109 S.Ct. at 629 (specifically disapproving of the reasoning of Local 1397 ). Grasty, 828 F.2d at 133, simply cites to the reasoning of Local 1397 on this issue, and hence also did not survive Reed
 
 
 [15]
 In Title VII actions, the EEOC is required to pursue a course of investigation and conciliation before bringing suit. 42 U.S.C. Sec. 2000e-5(b) (1976). The Secretary of Labor has no such legislative mandate. However, the practical demands of administration of a statute which applies to every American labor union "in an industry affecting commerce," 29 U.S.C. Sec. 402(i) (1982), make it vital for the Secretary to be able to resort to administrative investigation and negotiation before commencing litigation
 
 
 [1]
 N.J.S.A. 2A:14-2 reads: "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued."
 
 
 [2]
 N.J.S.A. 2A:14-1 reads: "Every action at law for ... recovery upon a contractual claim or liability, express or implied ... shall be commenced within 6 years next after the cause of any such action shall have accrued."
 
 
 [3]
 Sec. 414 states that:
 It shall be the duty of [an appropriate] principal officer of each labor organization ... to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement....
 Thus, despite authority to the effect that Ms. Colmenares may have no entitlement to copies of agreements made by her union with other employers, see, e.g., Broomer v. Schultz, 239 F.Supp. 699, 705 (ED Pa.1965), aff'd, 356 F.2d 984 (3rd Cir.1966), that issue is, at the very least, open to question.
 
 
 [4]
 Section 101(a)(2) addresses "Freedom of Speech and Assembly" within unions and ends with the proviso,
 That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 [5]
 In such a system the interests of union members cannot always rise to Bill of Rights levels. As the Court has observed in a related context, "The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents...." NLRB v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 181, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123 (1967)
 
 
 [6]
 See, footnotes 1, 2 supra
 
 
 [7]
 Thus, a union may go to court against a member "to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress had imbedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule." Scofield v. NLRB, 394 U.S. 423, 430, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385 (1969)
 
 
 [8]
 See, e.g., NLRB v. Granite State Joint Board, 446 F.2d 369, 372 (1st Cir.1971) (citing the "mutual subscriptions" reasoning in 1A Corbin on Contracts Sec. 198, at 210 (1963)), rev'd on other grounds, 409 U.S. 213, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972)
 
 
 [9]
 The applicable section of the LMRDA, Sec. 210, 29 U.S.C. Sec. 440 reads in its entirety as follows:
 Whenever it shall appear that any person has violated or is about to violate any of the provisions of this subchapter, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate. Any such action may be brought in the district court of the United States where the violation occurred or, at the option of the parties, in the United States District Court for the District of Columbia.
 
 
 [10]
 I find it significant that the majority has, at no point in its opinion, called attention to any labor case where non-collective bargaining issues have been deemed to constitute a "public interest" or "public purpose" sufficient to warrant the application of its "no statute of limitations" principle. Indeed, Reed, which involves a freedom of speech issue in a labor context, itself employs a state statute of limitations