Jesse COLPO, Plaintiff,

v.

GENERAL TEAMSTERS LOCAL UNION 326 of the INTERNATIONAL BROTHERHOOD OF TEAMSTERS et al., Defendants.

Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL 326, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.

Civ. A. Nos. 79–514, 80–181.

United States District Court, D. Delaware.

April 24, 1981.

Roderick R. McKelvie, James McC. Geddes, Robinson, McKelvie & Geddes, Wilmington, Del., for plaintiff Colpo.

James W. Garvin, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., Edward T. Ellis, U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff Marshall.

Jacob Kreshtool, Bader, Dorsey & Kreshtool, Wilmington, Del., Gary S. Witlen, Washington, D. C., for defendant Local 326.

## MEMORANDUM OPINION

STAPLETON, District Judge:

Since December 1980, the Secretary of Labor, through the Labor-Management Services Administration of the United States Department of Labor, has been in the process of supervising an election for the office of president of defendant General Teamsters Local 326, as ordered by this Court on December 24, 1980, pursuant to Section 482 of the Labor-Management Reporting and Disclosure Act ("the LMRDA"), 29 U.S.C. §§ 401 et seq. At the nominations meeting held April 5, 1981, incumbent Frank Sheeran and complainant Jesse Colpo were the only members nominated for the election, which is scheduled for May 10–11, 1981.

At several points during this process, Mr. Colpo has requested that the Local provide him with a list of employers under contract with the Local, so that he might have greater access to the electorate. Approximately 125 employers are under contract with Local 326, covering nearly 3,000 union members. The employers are spread throughout the State of Delaware.

The Department's supervisor took the position that barring exceptional circumstances, nothing in the Union's constitution or by-laws, and nothing in Title IV of the LMRDA entitled Mr. Colpo to an employer list in the form requested. However, the Department informed Mr. Colpo that in its view, he was entitled to inspect and make notes from each of the collective bargaining agreements themselves by virtue of Section 104 of the Act, 29 U.S.C. § 414.

After Mr. Colpo formally invoked his right under Section 104, the election supervisor informed the Union of the Department's position. The Union responded on April 10, 1981 with another refusal to allow Colpo access to the contracts.

As the situation now stands, the Department has instructed Local 326 to honor Mr. Colpo's right to inspect and make notes from the collective bargaining agreements. It is the Secretary's view that the Local's refusal violates Section 104, and may impair the fairness of the election by impeding Colpo's access to the voters. The Union has refused to comply with the Secretary's directive. The Secretary now asks this Court to order compliance with that directive.

The core issue presented by the Secretary's application is the proper construction to be given Section 104 of the LMRDA, 29 U.S.C. § 414. That Section provides:

It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor

organization other than a local labor organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which copies shall be available for inspection by any member or by any employee whose rights are affected by such agreement. The provisions of section 210 [29 U.S.C. § 440] shall be applicable in the enforcement of this section.

The Secretary correctly points out that there are two distinct parts of this section. The first imposes upon a union a duty *"to forward"* copies of certain bargaining agreements to an "employee" upon request. This duty and the corresponding right relate only to agreements which directly affect the rights of the requesting employee. *Broomer v. Schultz,* 239 F.Supp. 699 (E.D. Pa.1965), aff'd. 356 F.2d 984 (3d Cir. 1966). The second part of the statute imposes upon a union a duty to *"maintain"* a file of collective bargaining agreements to which it is a party and to permit certain access thereto. The Secretary asserts that this latter portion of Section 104 guarantees Mr. Colpo access to all such agreements. The Union contends that it gives him a right to inspect only the collective bargaining agreement with his employer.

The sparse legislative history cited by the parties is of little aid in resolving this controversy. Accordingly, we must find the answer in the text and overall purpose of the statute.

Stated in terms of text, the issue is whether the clause, "whose rights are affected by such agreement", modifies only "any employee" or whether it modifies "any member" as well. An analysis of the text indicates that this restrictive clause modifies only "any employee". First, the repetition of the words "by any" immediately preceding the reference to an employee strongly suggests that the draftsman intended to conclude the sentence with two independent clauses. More importantly, however, the Union's interpretation of the statute renders its reference to members meaningless. Since members are subsumed within the class "employees", if their rights under Section 104 are coextensive, there is no way to explain the introduction of the concept of union membership in a statutory provision which otherwise relates only to the broader category of employees. It thus appears from the text that Congress intended members of a union to have the right to inspect all collective bargaining contracts of their union, but intended to restrict the access of non-member employees to those agreements which affect their rights.

The attribution of such an intent to Congress would be in harmony with objectives of the LMRDA. The Act seeks "to protect the rights of rank and file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership". *Wirtz v. Hotel, Motel & Club Employees Union,* 391 U.S. 492, 497, 88 S.Ct. 1743, 1747, 20 L.Ed.2d 763 (1968). In order to make the "processes of democratic self-government" operate effectively, Congress realized that rank and file access to information about union affairs would be required and Section 104 is one of several provisions of the Act designed to guarantee that access. A member of a union seeking to participate in democratic self-government has a strong interest not only in ascertaining what his union leadership has negotiated on his behalf from his employer, but also in determining how that compares with what his union leadership has negotiated from other employers for the benefit of his fellow members.

The distinction suggested by the Secretary between members and non-member employees also seems consistent with the approach taken by Congress in enacting the LMRDA. As the Union stresses, Congress recognized that a union has an interest in keeping some information out of the hands of others who might use it to the detriment of the union and its membership and was

required to balance that interest against the interest of the rank and file and the public in having sufficient information to hold the union leadership accountable for its conduct of union affairs. This weighing process was particularly evident in the area of membership lists, for example. The information contained in collective bargaining agreements is clearly less sensitive than membership lists. Nevertheless, a union does have an interest in keeping that information from employers and it can be expected that Section 104 was also the product of a balancing process. In the course of such a process, it seems quite logical that Congress would draw the distinction for which the Secretary contends. Because of the common interests of union members and their union, disclosure of collective bargaining agreement information to members of the union satisfies a greater need and involves a smaller risk of re-publication to unauthorized parties than would disclosure to non-member employees.

For these reasons, I conclude that Section 104 gives Mr. Colpo the right to inspect all of the Union's collective bargaining agreements at its principal office. That section, by reference to Section 210 of the Act,* also gives the Secretary the right to seek the aid of this Court in vindicating Mr. Colpo's rights. While this right to apply for relief does not, of course, require that it be given, it is clear from the record in this case that intervention by the Court is necessary if Mr. Colpo's rights under Section 104 are to have any meaning. Injunctive relief is, accordingly, appropriate if there are no countervailing equitable considerations.

The Union points out that Mr. Colpo wants to see the collective bargaining agreements not for the purpose of comparing their terms but rather for the purpose of making a list of the places of employment of members of the Union so he can take his campaign to the "plant gate". Section 104 does not limit the right of inspection on the basis of purpose, however. While it may well be that a court of equity would decline to aid a union member who

was shown to be acting for the benefit of an employer, for example, it is not alleged that Mr. Colpo will use the information which he acquires in a manner adverse to the interests of the Union. In the absence of such an allegation, the entry of an injunction seems appropriate.