Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL 427, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Defendant.

Civ. A. No. 87–3575.

United States District Court, D. New Jersey.

Dec. 21, 1990.

As Amended April 2, 1991.

**424**

Michael Chertoff, U.S. Atty. by Jerome L. Merin, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Guazzo, Perelson, Rushfield & Guazzo by Mark C. Rushfield, Clifton, N.J., for defendant.

## OPINION

WOLIN, District Judge.

The Secretary of Labor (the "Secretary") and Local 427, International Union of Electrical, Radio and Machine Workers, AFL–CIO ("Local 427") have filed cross-motions for summary judgment. Because there is no genuine issue of material fact, and because the Court agrees with the Secretary's interpretation of the governing statute, the Court will enter summary judgment on behalf of the Secretary.

## I. BACKGROUND

In 1987, the Secretary filed a complaint alleging that Hortensia Colmenares, a member of Local 427, had requested a copy of the collective bargaining agreement between Local 427 and her employer. Complaint ¶ VII. Ms. Colmenares also asked to inspect the collective bargaining agreements between Local 427 and other employers. *Id.* Local 427 granted her request for a copy of the agreement between it and her employer but refused to allow her to inspect the other agreements. *Id.* The Secretary requested a judgment "directing the defendant to comply with Hortensia Colminares' [sic] request to inspect all collective bargaining agreements made by it." *Id.* at 3. The Court held, on summary judgment, that the applicable statute of limitations barred the action. *Brock v. Local 427*, 682 F.Supp. 1315 (1988). The Third Circuit Court of Appeals reversed on the statute of limitations issue and remanded for consideration on the merits. *Dole v. Local 427*, 894 F.2d 607 (3d Cir.1990). Following the reversal, the Secretary amended her complaint to request that the Court "enjoin[ ] the defendant from denying to any member in good standing of defendant the right to inspect all collective bargaining agreements to which defendant is a party." Amended Complaint at 3.

## II. DISCUSSION

This case presents two issues, one substantive, the other remedial. First, the Court must decide whether § 104 of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 414, requires a union local to allow a member to inspect collective bargaining agreements between the local and employers other than the member's employer. Second, because the Court holds that the union local is required to allow inspection of such agreements, the Court will consider whether to enjoin the local from refusing to allow any of its members to inspect any such agreement.

### A. *Interpreting § 104 of the LMRDA*

■ The Court faces these issues on cross-motions for summary judgment. A district court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Neither party argues that any factual dispute exists to bar summary judgment for either party as to liability.

Section 104 of the LMRDA circumscribes Local 427's obligation to permit inspection of collective bargaining agreements:

[1] It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement ...; [2] and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which *copies shall be available for*

*inspection by any member or by any employee whose rights are affected by such agreement.* The provisions of section 440 of this title shall be applicable in the enforcement of this section.

29 U.S.C.A. § 414 (1985) (emphasis added). The parties agree that the first part of this provision[1] entitles each employee, whether or not a union member, to receive a copy of the collective bargaining agreement between his or her employer and the local. Plaintiff's Brief at 5; Defendant's Brief at 7. The parties disagree, however, as to whether the underscored passage in § 104 entitles local members to review all collective bargaining agreements into which the local has entered.

The parties have presented one case which is directly on point, *Colpo v. General Teamsters Local Union 326*, 512 F.Supp. 1093 (D.Del.1981). In *Colpo*, Judge Stapleton, then a district court judge, held that § 104 requires locals to provide access to their members to all of the local's collective bargaining agreements. 512 F.Supp. at 1096. In interpreting the phrase "available for inspection by any member or by any employee whose rights are affected by such agreement," Judge Stapleton held, and this Court agrees, that the restrictive clause "whose rights are affected by such agreement" modifies only "any employee" and not "any member." *Id.* at 1095. The repetition of the words "by any" before "employee" indicates that inspection may be made "by any member" or "by any employee whose rights are affected by the agreement." *Id.* (sentence ends with two independent clauses). The alternative interpretation, which Judge Stapleton and this Court reject, is that inspection may be made "by any member [whose rights are affected by the agreement]" or "by any employee whose rights are affected by the agreement." Under that reading, however, the repetition of "by any" would serve no purpose. *See id.* The phrase could have been written "by any member or employee

---

1. Section 104's requirement that the local provide copies of the collective bargaining agreement to employees working under that agreement is referred to herein as the "first part" of

§ 104, as opposed to the "second part," which involves the inspection rights of union local members and employees, and is directly at issue here.

whose rights are affected by the agreement"; it was not, and the Court will not interpret the statute in such a way as render words redundant. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) (duty of court to give effect to every clause and word of statute, if possible); *Bell v. United States*, 754 F.2d 490, 498–99 (3d Cir.1985) (same).

The Court respectfully disagrees with a consideration Judge Stapleton found more important than the above analysis. He reasoned that all "members" are "employees." *Colpo*, 512 F.Supp. at 1095. Thus the reference to members would be redundant if the classes of employees and members with a right to inspect were both limited in the same way (*i.e.*, by the requirement that their rights be affected). *Id.* However, the definitions of "member" [2] and "employee" [3] in the LMRDA do not bear out the conclusion that a member is simply an employee who belongs to a union. The worker's union membership depends on the constitution or bylaws of that worker's union, whereas the worker's employee status does not. Moreover, the definitions indicate that an employee must generally have a job, but a member can be unemployed for any reason so long as he or she is in good standing with the union. In short, an employee is not necessarily a member and vice versa, and the use of both terms in the second part of § 104 would not be redundant under the interpretation urged by Local 427.

Local 427 argues that the two parts of the statute should be read together to make sense of the language in the first part of the statute that the local must give a copy of the collective bargaining agreement "to *any employee* who requests such a copy and whose rights *as such employee* are directly affected by such agreement...." Local 427's Brief at 9 (quoting

§ 104) (emphasis supplied by Local 427). Thus, according to Local 427, the omission of the "as such employee" language from the reference to "employee" in the second part of the statute "evidences Congressional intent not to limit the 'affected by such agreement' language in the second portion of Section 104...." Local 427's Brief at 9. Local 427's argument appears to depend on the "as such employee" phrase in the first part of § 104 being used for emphasis alone. As discussed above, however, a statute should be interpreted so as to give meaning to all of its words and phrases. *Reiter*, 442 U.S. at 339, 99 S.Ct. at 2331, *Bell*, 754 F.2d at 498–99. The Court reads the "as such employee" language to clarify instead of (or as well as) emphasize. In the phrase "to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights *as such employee* are directly affected such agreement," the underscored language lets the reader know that the rights at issue are not those of the union or the employer, but those of the requesting employee. The underscored passage may further clarify the statute by specifying that the agreement must affect the rights of the requester as an employee rather than as a member of a union local. Even if the "as such employee" language were used only for emphasis in the first part of § 104, the Court knows of no canon of statutory construction which renders significant the non-repetition of irrelevant language. Furthermore, even assuming the existence of such a canon, the Court finds the repetition of the "by any" phrase, discussed above, to be far more compelling as an indication that the member may inspect all of the local's agreements.

The Third Circuit Court of Appeals considered § 104 twice before determining its

---

**2.** Twenty-nine U.S.C.A. § 402(f) provides that "employee" includes "any individual whose work has ceased or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this chapter."

**3.** Twenty-nine U.S.C.A. § 402(*o*) provides that "member" includes "any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."

statute of limitations in this case. In *Price v. Int'l Brhd. of Teamsters,* the Court of Appeals held that a union and employer had not breached a collective bargaining agreement by referring a seniority issue to a grievance committee. 457 F.2d 605 (3d Cir.1972). In the course of deciding that no breach had occurred, the Court of Appeals reviewed § 104 as it related to contract administration:

> This position [that the individual union member could be required to conform to grievance procedure in a collective bargaining agreement] was reinforced in 1959, when the Labor Management Reporting and Disclosure Act made it incumbent upon *each union to make available to their [sic] members copies of the collective bargaining agreement then in force. (29 U.S.C. § 414) This part of the Act's "Bill of Rights" was intended to permit employees to be able to enforce their rights under the contract by allowing them to see what benefits they were entitled to under the agreement.* Implicit in this provision was the assumption that absent appropriate amendment of the labor contract, there could be no changes in the agreement that would abrogate rights contained in it. While modification could add to or explain provisions, it could not take away any rights already there.

*Id.* at 609–10 (emphasis added).

This discussion appears to treat only the first part of § 104. The Secretary argues that this passage indicates that each employee, whether or not a union member, has a right under the first part of § 104 to obtain a copy of the agreement with the employer. Secretary's Brief at 5. Local 427, on the other hand, argues that the same passage means that employees and unions have a right under the second part of § 104 to inspect the agreement affecting them, and only that agreement. Local 427's Brief at 9–10. The Court of Appeals' use of the word "available," which appears in the second part of § 104, lends some support to Local 427's argument. However, the statement that the LMRDA requires each union to make "copies of the collective bargaining agreement" available,

457 F.2d at 609–610, strongly supports the interpretation that the union must make multiple copies of the same agreement for their members. If the right to inspection were at issue, the union need keep only the original or a single copy. *See id.* Therefore, the Court concludes that *Price,* which only considered § 104 in dictum, did not interpret the second half of the statute.

The Court of Appeals revisited § 104 in *Tanzillo v. Local Union 617,* 769 F.2d 140 (1985). The plaintiff in *Tanzillo* brought suit, among other purposes, to obtain copies of all collective bargaining agreements in effect between his local and Arrow, his former employer, during the years of his employment by Arrow. *Id.* at 147. The Court of Appeals, which only quoted the first part of § 104, held that because the plaintiff was no longer an employee of Arrow, he had no right to a copy of agreements with Arrow during the period of his employment. *Id.* at 147–48. The majority opinion pointed out that the plaintiff voluntarily withdrew from the local which had contracted with his former employer when he went to work for another employer and joined a different local. *Id.* at 148. By stating that membership in a local, as opposed to an international, determines certain responsibilities under § 104, *id.,* the majority seemed to suggest that continued membership in the first local might have altered the analysis. Likewise, Judge Higginbotham noted in dissent that § 104's provision for "access to collective bargaining agreements by union members" was irrelevant to his analysis because the plaintiff "was no longer a member of Local 617 when he made his request...." *Id.* at 150 n. 1. Judge Higginbotham thus suggested that if the plaintiff had still been a member of his first local when he made the request, the second part of § 104 would have been relevant. *See id.* Given that the plaintiff had gone to work for a different employer, continued membership in the first local nevertheless would have given him the right to inspect the contract with a different employer, which is the issue this Court faces. Thus, both the majority and dissenting opinions in *Tanzillo* imply that mem-

bership in a local entitles a member to inspect all agreements into which the local has entered.

The District Court for the Eastern District of Pennsylvania has also issued dicta on the question before the Court. *Broomer v. Schultz,* 239 F.Supp. 699 (E.D.Pa. 1965), *aff'd per curiam,* 356 F.2d 984 (3d Cir.1966).[4] In *Broomer,* Judge Lord implied that § 104 does not give local members the right to inspect all agreements entered into by the local. Judge Lord, like the Court of Appeals in *Tanzillo,* quoted only the first part of § 104. *Broomer,* 239 F.Supp. at 705. Although the plaintiffs were members of the local, *id.* at 701, the court held that they were not entitled to the contract between their local and a company other than their employer. *Id.* at 705. The Court is not persuaded by, and therefore will not follow, Judge Lord's implicit holding that the plaintiffs did not have a right to inspect all of their local's contracts. *Accord Dole v. Local 427,* 894 F.2d at 617 n. 3 (Despite *Broomer,* the issue of Ms. Colmenares' entitlement to copies of agreements made with employers other than her own "is, at the very least, open to question.") (Garth, J., concurring).

The parties have not cited any legislative history on the precise scope of the statute. *Cf. Colpo,* 512 F.Supp. at 1095 ("The sparse legislative history cited by the parties is of little aid in resolving the controversy."). Given this dearth of legislative language on the narrow issue at hand, the Court will consider the general objectives of the LMRDA. *See Bell,* 754 F.2d at 495 (in the absence of legislative history, analyze language and general policy statements in case law). The purpose of the LMRDA as a whole is to "protect the rights of rank and file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership." *Wirtz v. Hotel, Motel & Club Employees Union,* 391 U.S. 492, 497, 88 S.Ct. 1743, 1747, 20 L.Ed.2d 763 (1968), *cited in Colpo,* 512 F.Supp. at 1095; *see also Dole v. Local 427,* 894 F.2d at 612–13 (discussing the democratic goals of § 104).

A broader, rather than narrower, reading of § 104 is consistent with the LMRDA's democratic purposes. *See Colpo,* 512 F.Supp. at 1095 (supporting interpretation with references to Congress' democratic objectives). The Court is well aware that the democratic purposes of the LMRDA do not mandate broad interpretations of § 104 which go beyond its terms. *See Tanzillo,* 769 F.2d at 148 (restricting right to copy of agreement under § 104 to current employees and members); *see also generally Carrothers v. Presser,* 818 F.2d 926, 929, 934 (D.C.Cir.1987) (LMRDA's general objectives of democracy do not create rights beyond its specific terms).[5] However, in this case, analysis of the text of the statute is consistent with those objectives.

Local 427's position on the application of § 104 to this case is enlightening in view of the statute's democratic purposes. The first part of § 104 only allows employees, whether union members or not, to obtain a copy of an agreement which directly affects them. Local 427's Brief at 7. Therefore, "retirees who maintain union membership, union members whose employment is voluntarily or involuntarily terminated, union members who have moved into management positions and the like would

---

4. The Court of Appeals' affirmance of Judge Lord's decision in *Broomer,* 356 F.2d at 984, does not discuss the scope of either part of § 104. After briefly reviewing the procedural history below, the opinion simply states that the panel "examined the record and [found] no error in the reasoning or the decision of the trial court." 356 F.2d at 984. This opinion did not discuss the law on the issue now before the Court.

5. *Carrothers* held that union members do not have a right to union mailing lists under 29 U.S.C. § 411(a). 818 F.2d at 930. That holding does not bear directly on the issue before the Court. As Judge Stapleton held in *Colpo,* "the information contained in collective bargaining agreements is clearly less sensitive than membership lists...." 512 F.Supp. at 1096. Thus, a holding that members have a right to inspect all of the local's agreements is not necessarily inconsistent with a holding that they do not have a right to mailing lists.

have no right to a copy of an agreement [under the first part of § 104]...." *Id.* at 8. So far, the Court has no quarrel with Local 427's interpretation of the statute. Local 427 then goes on to argue that these are the only union members who have a right to inspect the agreements under the second part of the statute, because these are the only members whose rights are "affected" by the agreement. *Id.* It appears to the Court a rather crabbed understanding of § 104 as a whole that the only union members who have access to a collective bargaining agreement *because* of their union membership are, as Local 427 argues, "retirees who maintain their union membership, union members whose employment is voluntarily or involuntarily terminated, union members who have moved into management positions and the like...." Local 427's Brief at 8. While the Court agrees that these members may inspect the agreement under § 104, the list does not stop there; a member may inspect all of the local's agreements.

Local 427's objection to the broader interpretation of § 104 is that it will allow employers to obtain copies of their competitors' collective bargaining agreements and use the agreements "as tools of negotiation or provocation against the union." Local 427's Brief at 10. Specifically, Local 427 argues, members who had been promoted to supervisory or management positions could inspect all of the local's agreements. *Id.* Local 427's inability to trust its members is disheartening. However, Local 427 (or at least its international) has the power to define who its members are. 29 U.S.C. § 402(*o*) (definition of "member"). If members who have been promoted out of the rank and file are not to be trusted, the union can strip them of their membership. Moreover, under *Tanzillo*, former members have no right to obtain collective bargaining agreements relevant to their rights as former employees. 769 F.2d at 148. Thus, Local 427 should not be so concerned

about disloyal management or supervisory members.

The alleged divisiveness [6] resulting from the members' knowledge of all their local's agreements would apparently have more of an impact on their satisfaction with the leadership than on the employers' bargaining power. If the union members of employer A knew that their counterparts working for employer B were receiving a better package, they might have more of a feeling for their own bargaining power. If employers could increase their own bargaining power by sharing information on collective bargaining agreements, nothing in § 104 can stop them. The Court does not buy Local 427's argument that "ignorance is strength."

## B. *Scope of Relief*

██ The Secretary argues that "defendant's present conduct and admitted past conduct" supports the Secretary's request for an injunction against Local 427 to prevent it from refusing to allow any of its members to inspect any of its collective bargaining agreements. Brief at 9 (citations omitted). The Secretary argues further that "it is undisputed" that Local 427's refusal to allow Ms. Colmenares to inspect the agreements was not unique but the result of Local 427's "considered policy." *Id.* at 11. Therefore, the Secretary concludes, future requests to inspect the agreements by other Local 427 members, including Ms. Colmenares, will have to be litigated on a case-by-case basis in the absence of an injunction. *Id.* at 11–12.

Section 104 of the LMRDA, 29 U.S.C. § 414, provides for enforcement under 29 U.S.C. § 440, which states, in relevant part, "[w]henever it shall appear that any person has violated or is about to violate any of the provisions of this subchapter, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate." Judge Stapleton issued an in-

**6.** Local 427 has not brought to the Court's attention any facts—either specific facts within the context of this case or general facts in the form of a Brandeis brief—to support its argument that a broad interpretation of § 104 will bring

dire consequences. Especially on Local 427's cross-motion for summary judgment, this lack of facts, at best, does not aid its policy argument. *See* Federal Rules of Civil Procedure 56.

junction in *Colpo,* but the scope of that injunction was apparently limited to the enforcement of the individual member's rights. *See* 512 F.Supp. at 1096 (injunction "necessary if Mr. Colpo's rights ... to have any meaning"). The District Court for the District of Delaware issued a broad injunction in an LMRDA case brought by the Secretary of Labor. *Shultz v. Local Union 1694,* 310 F.Supp. 1356 (D.Del. 1970).[7] In *Shultz,* Judge Latchum ruled that the union and its officers had violated their record-keeping duties under the LMRDA. *Id.* at 1360–61. After considering both the union's past failures to keep accurate records and its efforts to establish future compliance, the court issued an injunction requiring that the reports be filed and prohibiting future violations for five years. *Id.* at 1361. Defendants would be permitted to move at the end of this period to terminate the injunction upon a showing that they had satisfied its terms. *Id.*

The Court will determine the need for an injunction in a legal framework that reaches beyond the limited number of LMRDA cases. The purpose of an injunction is to prevent future violations of rights, and injunctions may be imposed even without a showing of past wrongs. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). In order to impose an injunction, however, a court must determine whether "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.,* 73 S.Ct. at 898; *New Jersey Turnpike Authority v. Jersey Central Power,* 772 F.2d 25, 32 (3d Cir.1985) (quoting *W.T. Grant*). In making this determination, a court should consider "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some

cases, the character of past violations." *W.T. Grant,* 345 U.S. at 633, 73 S.Ct. at 898.

In the present case, Local 427 has not expressed any intent to comply with or disregard a judgment against it. Nor has it discontinued its refusal to allow Ms. Colmenares to inspect its agreements. As for past conduct, the correspondence between Local 427's counsel and counsel for the Secretary helps illuminate its attitude toward future requests to inspect its agreements. In his September 23, 1986 letter to Eric Feldman, Director, Department of Labor, Caesar Guazzo confirmed Local 427's refusal to allow Ms. Colmenares to inspect all of its agreements:

> This request has been rejected by me on the basis of the case law which has interpreted Section 414 of 29 U.S.C. I cite for you *Broomer v. Schultz* [citations omitted], which holds that Section 414 of 29 U.S.C. does not give to an employee the right to a collective bargaining agreement(s) which is not with the employee's employer since other agreements do not "directly affect" the employee.

> Since New Jersey is directly affected by decisions of the U.S.C.A. for the 3rd Circuit, this decision is binding upon your department. I would consider any further effort to compel the local to expose its collective bargaining agreements with other employers as serious interference with the local's prerogatives, and as having a chilling effect upon the collective bargaining process. *Responding to politically motivated members of a union is not contemplated under the law.*

Exhibit 7 to the November 16, 1987 Affidavit of Celia Zifrony[8] (emphasis added). On

---

7. *Shultz* makes no mention of 29 U.S.C. § 440. *See* 310 F.Supp. 1356. However, § 431, which contains the reporting requirements which the Secretary sued to enforce in *Shultz,* only authorizes enforcement suits by union members. Section 440 allows the Secretary to bring civil actions upon violations of "this subchapter," *i.e.,* Subchapter III of the LMRDA, which includes § 431. Therefore, the Court infers that the Secretary brought *Shultz* under § 440, the same

provision under which the Secretary has brought this case.

8. The Court may consider the letters attached to Ms. Zifrony's affidavit in support of the Secretary's motion for summary judgment because Ms. Zifrony affirmed that she was the custodian of records for the Newark District Office of Labor–Management Standards, United States Department of Labor, Region II, and that she kept and copied the correspondence in the ordi-

October 1, 1986, Mr. Guazzo, after an intervening letter from Mr. Feldman, stated that

Colpo is also a 3rd Circuit case, but it deals with provisions of the law which regulate crediting of dues through checkoff procedures, and the effect on running for union office. It has nothing at all to do with broad ranging demands by members for union contracts which do not "directly affect" them.

I regret that I cannot accept your interpretation of Colpo in support of your position. Local 427 has more than satisfied the requirements of law and the union constitution.

Exhibit 2 to the November 16, 1987 Affidavit of Celia Zifrony.

Local 427 has abandoned the legal arguments made in these letters, *i.e.*, that *Broomer* is binding precedent and that *Colpo* is inapposite. However, Mr. Guazzo effectively registered the comprehensiveness of, and rationalization for, Local 427's opposition to allowing its members to inspect Local 427's agreements. Local 427's objections to allowing inspection are not limited to Ms. Colmenares, but apply to all members. In the context of the democratic purpose of § 104, Local 427's refusal to comply with the requests of "politically motivated members" is ironic. More importantly, this statement suggests that Local 427 has a policy against granting future requests by its members, whether dissident or not, to inspect its agreements. As such, the Court recognizes a significant, cognizable danger of Local 427's future violation of § 104 of the LMRDA. *See W.T. Grant*, 345 U.S. at 633, 73 S.Ct. at 898.

The Court rejects Local 427's argument that the imposition of an injunction will "automatically compel granting access ... under threat of contempt of this Court's order." Local 427's Brief at 15. As Judge Latchum pointed out in *Shultz*,

Contempt citations are not 'automatic' but rest on an evaluation of circumstances as they arise. The purpose of an injunction here is to shift to the Union the responsibility for establishing compliance, rather than requiring continued initiatives by the Secretary of Labor in investigation and litigation. In this regard, it is the defendants who have the complete control of the circumstances which will determine whether any contempt proceedings are in order. Simply by complying with their present duties, as defined by statute, the defendants will be able to avoid any possible contempt citation.

310 F.Supp. at 1361–62. Local 427 likewise controls its destiny with regard to contempt citations. In addition, the Court follows the reasoning of *Shultz* in shifting the responsibility for establishing future compliance on Local 427.

The Court is mindful of the proviso stated in *Shultz* that a finding of contempt depends "on an evaluation of circumstances as they arise." Not every refusal to allow a member to inspect the agreements will result in a contempt citation. *See Colpo*, 512 F.Supp. at 1096 (court might refuse to aid union member acting for employer's benefit). As Local 427 recognized when it opposed the Secretary's motion to amend the Complaint to include the request for a broad injunction, if the Court allowed Ms. Colmenares access to the agreements, and information surfaced that Ms. Colmenares used the information for an improper purpose, "the defendant might thereby be entitled to oppose again providing such access to Ms. Colmenares on a future occasion under the reasoning of *Colpo*." Local 427's Memorandum of Law in Opposition to the Secretary's Motion to Amend the Complaint at 8 n. 1.[9] The Court

---

nary course of business. *See* Fed.R.Civ.P. 56(e) (requiring admissible evidence in support of motion for summary judgment). Mr. Guazzo's statements are deemed to be admissions by his client, Local 427.

9. Local 427 implies in the same footnote in its brief opposing the motion to amend that Ms. Colmenares might have a weaker right to in-

spect the agreements than Mr. Colpo, who was a candidate for union office. *Colpo*, 512 F.Supp. at 1094. However, *Colpo* pointed out that "Section 104 does not limit the right of inspection on the basis of purpose...." *Id.* at 1096. As in *Colpo, id.*, Local 427 has not alleged that the member seeking access to the agreements is

**432**

would consider a member's purpose in seeking access to the agreement should Local 427 refuse to honor a member's request to inspect its agreements.

Finally, the Court will retain jurisdiction over this case for the purpose of determining the terms of the injunction. The Secretary has not requested that the Court enter an injunction of a certain scope and duration; nor has the Secretary argued as to how the injunction should be terminated. As indicated in this Opinion, the Court believes on the basis of the record before it that the injunction should protect the rights of all of Local 427's members, rather than the rights of Ms. Colmenares alone. However, Local 427 is free to present evidence to militate against this preliminary conclusion. The Court urges the parties to bring this remaining issue before the Court as soon as practicable.

## III. CONCLUSION

For the foregoing reasons, the Court holds as a matter of law that Ms. Hortensia Colmenares is entitled to inspect all of the collective bargaining agreements to which Local 427 is a party. The Court will order that summary judgment on behalf of the Secretary of Labor be granted and that summary judgment on behalf of Local 427 be denied. On the present record, the Court finds a significant, cognizable danger of future violations of § 104 of the LMRDA, 29 U.S.C. § 414, by Local 427. The Court will retain jurisdiction over this matter for the purpose of determining the proper scope, duration, and dissolution terms of an injunction, if any, against Local 427.

acting on behalf of management. The burden          of showing improper purpose is on defendant.